IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBIN ABRAMSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION FILE NO. |
| | * | |
| MICROSOFT CORPORATION, | * | _____ |
| | * | |
| Defendant. | * | |

## COMPLAINT

COMES NOW, Plaintiff Robin Abramson and submits this Complaint for Damages against Defendant Microsoft Corporation, respectfully showing the Court as follows:

## NATURE OF THE ACTION

1. This is a civil action claiming damages for discrimination on the basis of disability and retaliation for engaging in protected activity in response to such discrimination, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12111, *et seq.* (hereinafter referenced as "ADA" or the "Act"), and for various claims in violation of Georgia law.

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction as to state law claims). Venue is

proper pursuant to 28 U.S.C. §1391 as the factual circumstances giving rise to this action occurred within the Northern District of Georgia.

## PARTIES

3.  At all times pertinent hereto, Plaintiff Robin Abramson has been a resident of the State of Georgia and was an employee of Defendant, as defined by the above-referenced statutes.  Plaintiff is a member of a protected class because of her condition of disability: Type-1 diabetes and clinical attention deficit/hyperactivity disorder ("ADHD").  Moreover, Plaintiff engaged in protected activity, as defined by the above-referenced statutes, and was subjected to retaliation thereafter because of such protected activity.

4.  At all times pertinent hereto, Defendant Microsoft Corporation has employed fifteen or more employees, has been an "employer" as defined by the Act, and employed Plaintiff.  Upon information and belief, Defendant employed over five hundred employees, at all times relevant to this action.

5.  Defendant is a foreign corporation duly authorized to conduct and engaging in business within the State of Georgia and this District.  Defendant may be served with process through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.

6.  At all times relevant hereto, Defendant has been engaged in business in the State of Georgia as Microsoft Corporation.

## CONDITIONS PRECEDENT AND PROCEDURAL HISTORY

7. Plaintiff has satisfied all administrative prerequisites to the bringing of this action. Plaintiff filed a charge or discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on April 5, 2023. On October 3, 2023, Plaintiff received a notice of right to sue issued by the EEOC. Plaintiff now timely files this Complaint against Defendant in the above-styled action.

## STATEMENT OF FACTS

8. At all times relevant to this matter, Plaintiff was employed by Defendant as a Senior Client Partner, engaged in the management of large corporate client accounts. She began her employment with Defendant in November 2017 and began reporting to the supervisor relevant to her claims herein, Dewey Carter, in March 2021. She continued to be employed until her wrongful, discriminatory, and retaliatory termination on October 11, 2022. Plaintiff is an otherwise qualified individual with a disability and subject to the protections afforded by the Act. Plaintiff has acute Type-1 diabetes and clinical ADHD and these conditions are severe enough to substantially limit one or more major life activities.

9. Plaintiff was subjected to disparate treatment and harassment due to her disabilities, which were known to her supervisor and co-workers, and to

further harassment and retaliation after she officially reported such discrimination and harassment.

10. The above-referenced discriminatory, harassing and retaliatory treatment came at the hands of Plaintiff's direct supervisor, Dewey Carter, and, eventually, Mr. Carter's supervisor, as well, Shilpa Nagaraja, both of whom were also employed by Defendant.

11. In January 2022, Plaintiff was coerced by Mr. Carter into taking what she believed to be unnecessary medical leave, which began in February 2022, rather than being given additional and reasonable work support that she requested from Mr. Carter.

12. Upon her return from medical leave in April 2022, Plaintiff was deliberately isolated from other team members and subjected to harassment by Mr. Carter, upon information and belief, in an effort to cause her to resign her employment with Defendant.

13. Thereafter, in May 2022, Mr. Carter issued Plaintiff the first negative performance report she had received in her tenure as an employee of Defendant. This report was inaccurate and without specific basis and was contested by Plaintiff.  Upon information and belief, its issuance was simply another unlawful and discriminatory effort to push Plaintiff to quit due to her disability.

14. Following this performance report, Plaintiff made two official human resources complaints through Defendant's internal channels for such matters.

Plaintiff averred therein that Mr. Carter's conduct was discriminatory and intentionally caused her extreme and undue stress and exacerbated her conditions.

15. No action was taken in response to Plaintiff's complaints and Mr. Carter continued to deliberately isolate her from other team members which simply and unnecessarily made Plaintiff's job more difficult and caused Plaintiff additional undue stress.

16. As a result of this ongoing discriminatory and harassing conduct by Mr. Carter, Plaintiff requested a transfer to another team, but this request was denied. Upon information and belief, Mr. Carter's conduct was also, in addition to discriminatory based upon her disability, in retaliation for Plaintiff's previous human resources complaints about the disparate, discriminatory, and harassing conduct to which she was subjected by Mr. Carter.

17. Plaintiff then filed a third human resources complaint alleging ongoing discriminatory conduct and also retaliation against her by Mr. Carter for her earlier complaints. Plaintiff was instructed that she would have to speak with Mr. Carter's supervisor, Shilpa Nagaraja as to her complaints about Mr. Carter.

18. Plaintiff explained to Ms. Nagaraja that Mr. Carter's conduct was discriminatory on the basis of her disability and retaliatory based upon her earlier complaints and that it had caused her undue stress such that she had received a post-traumatic diagnosis and her conditions had been and continued to be exacerbated. Despite Plaintiff essentially begging Ms. Nagaraja for help, no

assistance or remediation was ever taken and Mr. Carter's conduct was allowed to continue.

19. Thereafter, Plaintiff's annual meeting as to her annual bonus compensation was delayed and/or postponed several times and in mid-September 2022, Plaintiff was informed that she would not receive *any* bonus despite having exceeded each of her performance goals *because* she had been out on medical leave, as demanded by Mr. Carter, earlier in the year.  In fact, upon information and belief, Plaintiff's performance exceeded that of other team members, despite her time off-work on medical leave, and those other employees did receive performance bonuses.

20. The discriminatory and retaliatory denial of substantial monies earned despite her condition and the conduct to which she had been subjected all year caused Plaintiff additional stress and necessitated further medical treatment.

21. On October 11, 2022, a performance evaluation meeting was attended by Mr. Carter, Plaintiff, and a human resources representative.  Plaintiff's employment was terminated without any reasonable or legitimate basis given and despite her performance having exceeded the goals set by Defendant for that year. Rather, Plaintiff's termination was discriminatory on the basis of her disability and in retaliation for her human resources complaints about Mr. Carter's discriminatory, harassing, and retaliatory conduct.

22. Apparently, having lost patience with his deliberate attempts to cause Plaintiff to quit, Mr. Carter achieved his desired outcome by firing Plaintiff with the full ratification of Defendant. Defendant took absolutely no action throughout 2022 to address Plaintiff's complaints and requests for help and allowed the ongoing discrimination and harassment to which she was subjected to continue. Thereafter, Defendant allowed the denial of the payment of bonus monies earned by Plaintiff and the termination of her employment despite the fact that she exceeded her performance goals for the year. Despite her requests for additional assistance and later for a transfer, and her complaints begging for help and relief from the misconduct to which she was subjected, Plaintiff was ignored by, of course, Mr. Carter, but also by human resources representatives and Mr. Carter's supervisor. Defendant had every opportunity to stop the discrimination, harassment, and retaliation to which Plaintiff was subjected, including, but not limited to, the denial of her earned bonus monies, but did not do so. This was not just an error, it was a choice, made repeatedly by Defendant, that caused Plaintiff to unduly suffer in violation of the protections afforded by the Act.

## COUNT I
## DISABILITY DISCRIMINATION

23. Plaintiff realleges and incorporates paragraphs 1-22 herein by reference.

24. This is an action against Defendant for discrimination based upon disability brought under the ADA.

25. Plaintiff was the victim of discrimination on the basis of disability in that she was repeatedly and substantively treated differently than similarly situated non-disabled employees of Defendant and she was subjected to harassment sufficient to materially and adversely alter the conditions of her employment with Defendant on the basis of her disability.

26. Defendant is liable for the adverse treatment and hostility to which Plaintiff was subjected because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated therein despite Plaintiff's repeated complaints to supervisors and management of discriminatory treatment and harassment.

27. Defendant's toleration and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

28. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a disability-based nature and in violation of the laws set forth herein.

29. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant as set forth in part above and resulted in Plaintiff being fired.

30. The events set forth herein proximately led to Plaintiff's termination.

31. Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon disability in violation of 42 U.S.C. §§ 12111, *et seq*.

32. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back pay, interest on pay, bonuses and other benefits.

## COUNT II
## RETALIATION

33. Plaintiff realleges and incorporates paragraphs 1-32 herein by reference.

34. Defendant is an employer as that term is used under the applicable statutes referenced above.

35. The foregoing allegations establish a cause of action for unlawful retaliation under 42 U.S.C. §§ 12111, *et seq.* as Plaintiff was subjected to adverse treatment after she reported or opposed unlawful employment practices.

36. The foregoing unlawful actions by Defendant were purposeful.

37. Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

38. Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

39. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back pay, interest on pay, bonuses and other benefits.

## COUNT III
## BREACH OF CONTRACT

40. Plaintiff realleges and incorporates paragraphs 1-39 herein by reference.

41. Defendant set certain performance requirements which were prerequisite to employees' (including Plaintiff's) receipt of an annual bonus called a Company Bonus Incentive or "CBI" which in Plaintiff's experience was typically tendered as approximately half of the amount of her annual salary.

42. CBI requirements were set for Plaintiff for 2022 and her job performance exceeded those requirements.  However, Defendant denied Plaintiff

any CBI bonus, allegedly because she had taken medical leave during 2022, even though her performance exceeded the CBI requirements.

43. Plaintiff's CBI receipt was not discretionary. It was based upon parameters set by Defendant which Plaintiff then, in reliance on Defendant's past practice and representation, met and exceeded, but was denied the benefit of the CBI funds.

44. Defendant's conduct in denying Plaintiff the CBI funds she earned through her performance constitutes a breach of contract or, at a minimum, a breach of implied contract, under Georgia law.

45. Plaintiff was damaged by Defendant's misconduct in denying her a 2022 CBI.

46. As a direct and proximate result of the foregoing misconduct by Defendant, Plaintiff suffered substantial pecuniary loss.

## COUNT IV
## UNJUST ENRICHMENT

47. Plaintiff realleges and incorporates paragraphs 1-46 herein by reference.

48. Defendant's misconduct, as set forth above, in denying Plaintiff any 2022 CBI allowed Defendant to receive the benefit of Plaintiff's job performance, occasioned upon her reliance on the CBI requirements set forth by Defendant, without remuneration to Plaintiff.

49. In the alternative to Plaintiff's breach of contract and implied contract claims, Defendant's misconduct constitutes unjust enrichment under Georgia law for which Plaintiff is entitled to damages, insofar as Plaintiff suffered substantial pecuniary loss as a direct and proximate result of Defendant's misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) An award of all appropriate and legally available monetary relief, including compensation for lost wages, bonuses, benefits, and other remuneration;

(b) An award of pre- and post-judgment interest on all amounts due and awarded to Plaintiff, pursuant to 28 U.S.C. § 1961 and Georgia law;

(c) An award of the reasonable attorneys' fees and costs incurred in this action, pursuant to 42 U.S.C. §§12117 and 2000e-5(k), and applicable Georgia law; and

(d) Any other relief such as the Court deems just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

This 29th day of December, 2023.

Respectfully submitted,

/s/ David A. Cox
DAVID A. COX
Ga. Bar No. 192381
2870 Peachtree Road, # 182
Atlanta, Georgia 30305
dacox@dacoxlaw.com
Phone: 404-276-0798